# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 23-cv-21788-BLOOM/Otazo-Reyes

MONTAZE BROZ, LLC, *a Florida*
*Limited Liability Company*,

      Plaintiff,

v.

GLOBAL OCEAN LINE, INC., *a Florida*
*for Profit Company*,

      Defendant.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court on Defendant Global Ocean Line's ("GOL" or "Defendant") Motion to Dismiss, ECF No. [6] ("Motion"), and the attached exhibits that include terms and conditions of a GOL Bill of Lading, ECF No. [6-1] ("Exhibit A" or "Terms and Conditions");[1] a Booking Confirmation from ocean carrier CMA-CGM to Defendant, ECF No. [6-2] ("Booking Confirmation" or "Exhibit B"); and a Booking Form from NationWideDealers LLC, an entity that booked a shipment with Defendant on behalf of Plaintiff Montaze Broz, LLC, ECF No. [6-3] ("Booking Form" or "Exhibit C"). Plaintiff filed a Response, ECF No. [8], to which Defendant did not file a Reply. The Court has considered the Motion, the Exhibits attached thereto, the Response, the record in this case, the applicable law, and is otherwise duly advised. For reasons that follow, the Motion is denied.

---

[1] Defendant did not attach a copy of a Bill of Lading. *See* ECF No. [6] at 3.

## I.    BACKGROUND

This action is based on cargo owned by Plaintiff and stolen while in Defendant's custody. On May 12, 2023, Plaintiff filed its Complaint asserting one count of negligence and admiralty or maritime jurisdiction under 28 U.S.C. § 1333, ECF No. [1] ¶ 1. Plaintiff alleges the following: Plaintiff is a limited liability company and the owner of a 2019 Ford Raptor F-150 bearing VIN 1FTFW1RG9KFB88757 ("Cargo"), and Defendant is a for-profit company engaged in transporting goods for hire by water, and/or operating as a non-vessel operating common carrier. *Id.* ¶ 2. On November 11, 2022, Plaintiff delivered its Cargo to Defendant for Defendant to transport the same from Miami, Florida, to Bremerhaven, Germany. *Id.* ¶ 4. Defendant issued a Booking Confirmation which did not refer to any terms and conditions and Defendant did not provide Plaintiff at any time with any other document to which the parties agreed to any terms or conditions incident to the transport of the F-150. *Id.* ¶¶ 4, 5. On November 15, 2022, the Cargo was stolen while in storage and under the exclusive control and possession of Defendant. *Id.* ¶ 6. As a result of Defendant's negligence, Plaintiff has been damaged in excess of approximately $37,360.71. *Id.* ¶ 9.

On June 12, 2023, Defendant filed the instant Motion, contending that the maritime Economic Loss Rule bars the negligence claim because Plaintiff has not alleged any damage other than the loss of the Cargo, and asserting the following:

> the Complaint alleges that a Bill of Lading had not issued at the time the cargo had been damaged, however that is not to say that a bill of lading was not intended to have been issued, as it is the standard in the industry for the Bills of Lading to be issued only after the cargo is loaded on board ship and the ship sails.

*See* ECF No. [6] at 3. As such, Defendant argues that the relationship between the parties is contractual, so Plaintiff's alleged losses are not recoverable under a negligence theory because the maritime Economic Loss Rule bars the claim. *Id.*

As noted, Defendant attaches certain Exhibits to its Motion. Defendant highlights the following provisions in the Terms and Conditions:

> All carriage under this Bill of Lading to or from the United States shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. sections 1300-1315 (hereafter, "COGSA").
>
> . . .
>
> Except as may be otherwise specifically provided herein, said law shall govern before the goods are loaded on and after they are discharged from the vessel whether the goods are carried on deck or under deck and throughout the entire time the goods are in the custody of the carrier.
>
> . . .
>
> The defenses and limits of liability provided for in this Bill of Lading shall apply in any action or claim against Carrier relating to the goods, or the receipt, transportation, storage or delivery thereof, whether the action be founded in contract, tort or otherwise.
>
> . . .
>
> Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of US $500.00 per package or per customary freight unit, unless Merchant, with the consent of Carrier, has declared a higher value for the goods in the space provided on front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability.

ECF No. [6-1] at 1. Ostensibly, Defendant seeks to limit Plaintiff's recovery to the $500.00 limitation of liability provision described above.

The Booking Confirmation identifies Defendant as the Shipper for one "40'HC" of "[o]ther vehicles, with only spar" from Miami, Florida to Bremerhaven, Germany. *See* ECF No. [6-2] at 1. Exhibit C is an unexecuted Booking Form from NationWideDealers LLC that identifies Plaintiff as the "Party in US / Seller / Origin." ECF No. [6-3] at 1. The Booking Form pertains to a 2019 Ford F150 Raptor bearing VIN 1FTFW1RG9KFB88757. *Id.*

Plaintiff responds that the Court is limited to considering the four corners of the Complaint on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. [8]

at 3-4, and it has adequately pled a claim sounding in negligence. *Id.* Moreover, even if the Court were to consider the attachments to the Motion, Plaintiff reasons that it was not bound by the Terms and Conditions because there are no allegations or evidence supporting that Defendant provided those Terms and Conditions nor did Defendant make any reasonable effort to warn Plaintiff that the Booking Confirmation was subject to those Terms and Conditions. *Id.* at 3.

## II.    STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).

### III.    DISCUSSION

At the outset, the Court notes Defendant does not dispute that the Complaint contains a short and plain statement of a cognizable claim but argues the maritime Economic Loss Rule bars Plaintiff's negligence claim. Moreover, the Court may properly consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed, meaning that the authenticity of the document is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Here, the Complaint alleges Defendant issued a Booking Confirmation which did not refer to any terms and conditions and did not provide Plaintiff with any other document to which the parties agreed to be bound by any terms or conditions. *Id.* ¶¶ 4, 5. Therefore, a copy of the Booking Confirmation, and any other documents showing that the parties agreed to any terms and conditions incident to Cargo transport, would be "central" to Plaintiff's negligence claim because such documents may be dispositive of whether Plaintiff has adequately stated the claim. Exhibit B is a Booking Confirmation issued by Defendant*, see* ECF No. [6-2], and, therefore, central to Plaintiff's claim as it is referenced in Plaintiff's Complaint. *See Day*, 400 F.3d at 1276 (affirming that contents of a dealership contract were central to appellant's resale price maintenance claim).

Exhibit A contains Terms and Conditions, ECF No. [6-1], but the Complaint does not refer to those and states there were no terms and conditions to which the shipment of the cargo was subject. However, if Defendant could show Plaintiff were bound by the Terms and Conditions, the maritime Economic Loss Rule might be applicable to Plaintiff's negligence claim, so Exhibit A, in conjunction with the Booking Confirmation, would be "central" to the negligence claim. Moreover, the Court finds Exhibit C is also "central" to the claim. Although Exhibit C is an unexecuted Booking Form from NationWideDealers, LLC, it describes Plaintiff as the "Party in US / Seller / Origin" and describes the shipment item as a "2019 FORD F150 RAPTOR" with VIN

1FTFW1RG9KFB88757. ECF No. [6-3]. Exhibit C is offered to show that the Cargo is the subject of the Booking Confirmation. The Court may thus consider the Exhibits because Plaintiff does not dispute their authenticity.

The Court next considers whether the maritime Economic Loss Rule bars Plaintiff's negligence claim. Although the Florida Supreme Court has limited its application to products liability cases, *see Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013), no such limitation has been imposed in cases governed by maritime law. Generally, the maritime Economic Loss Rule "provides that a tort action may not lie where the basis for liability arises from a contract." *St. Clair Marine Salvage, Inc. v. M/Y BLUE MARLIN*, 2014 WL 2480587, at *4 (E.D. Mich. June 3, 2014) (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986)). The Rule finds its origins in *East River S.S.*, where the Supreme Court held a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871.

The maritime Economic Loss Doctrine has been expanded to reach situations where a party is attempting to bring a breach of contract action couched as a tort claim. *See BVI Marine Const. Ltd. v. ECS-Florida, LLC*, 2013 WL 6768646, at *3-4 (S.D. Fla. Dec. 20, 2013). The Supreme Court's decision in *E. River S.S.* indirectly cautioned that claims sounding in tort but stemming from a contractual dispute are often more appropriately remedied pursuant to the contractual relationship. *East River S.S. Corp.*, 476 U.S. at 874 ("Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums."). "[W]hen an enforceable contract exists, it is preferable to resolve disputes on the basis of the contractual relationship." *BVI Marine Const.*, 2013 WL 6768646, at *4. However, the maritime Economic Loss Rule does not bar a claim where "the specific acts of alleged negligence are outside the scope

of [a] contractual agreement and do not arise from [a] contractual relationship." *See CGK LLC v. Pantropic Power, Inc.*, No. 20-cv-60730-WPD, 2020 WL 13356471, at *4 (S.D. Fla. June 12, 2020) (finding that parties were not in privity where specific alleged negligence acts occurred prior to the commencement of a contractual relationship).

Here, the Complaint alleges that on November 11, 2022, Plaintiff delivered the Cargo to Defendant to transport the same from Miami, Florida to Bremerhaven, Germany. ECF No. [1] ¶ 4. The Complaint further alleges Defendant did not issue, nor did it provide Plaintiff, "a Bill of Lading or any other written contract pursuant to which the parties agreed to terms or conditions incident to" Cargo transport. ECF No. [1] ¶ 5. The Booking Confirmation describes a shipment by Defendant as the shipper of a "40'HC" containing "[o]ther vehicles, with only spar." ECF No. [6-2] at 1. The Booking Confirmation further states that the shipment's Port of Loading is Miami, FL, and that its Port of Discharge is Bremerhaven. *Id.* As the Complaint alleges, the Booking Confirmation "makes no mention of terms and conditions or any other document." ECF No. [1] ¶ 4. The allegations in the Complaint—accepted as true for the purposes of deciding the Motion— and the Booking Confirmation do not show the parties are in contractual privity. That fact distinguishes the instant action from *American Marine*, a case on which Defendant relies, ECF No. [6] at 2, where the parties in that dispute sat in contractual privity because the plaintiff and the defendant, under a fictitious name, were named parties to a service agreement. *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019). Here, the parties are not named parties to the Booking Confirmation, and there are no indications on the Booking Confirmation that the parties entered into a contractual agreement to ship the Cargo. Although the other Exhibits, the Terms and Conditions and the Booking Form, are relevant to show that the Booking Confirmation relates to the Cargo, there is no indication that the Cargo is subject to the

attached Terms and Conditions. That is so because Defendant does not attach a Bill of Lading. As Plaintiff points out, Defendant has acknowledged that a Bill of Lading "had not issued at the time the cargo had been damaged." *See* ECF No. [6] at 3. As such, although the Terms and Conditions refer to a Bill of Lading, there is no evidence a Bill of Lading ever issued, and no indication that Plaintiff agreed to be bound by the Terms and Conditions related to the Cargo. Thus, Defendant fails to show that the parties' relationship is contractual or that the instant action arises from a contractual agreement. *See CGK*, 2020 WL 13356471, at *4.

Recognizing that its Exhibits do not evidence on their own Plaintiff's agreement to be bound by the Terms and Conditions, Defendant contends "it is standard in the industry for the Bills of Lading to be issued only after the cargo is loaded on board ship and the ship sales," so Plaintiff was subject to the Terms and Conditions of a Bill of Lading. *See* ECF No. [6] at 3 (citing *Berkshire Knitting Mills v. Moore-McCormack Lines, Inc.*, 265 F. Supp. 846 (S.D.N.Y. 1965)). However, Defendant's reliance on *Berkshire Knitting* is misplaced.

In *Berkshire Knitting*, plaintiff sought partial summary judgment striking a defense that defendant's liability was limited by the Carriage of Goods by Sea Act to an amount not exceeding $500.00. *Berkshire Knitting*, 265 F. Supp. at 847. Plaintiff sued a carrier when one of its wooden cases containing hosiery knitting machines was damaged on a pier. *Id.* At the time of the damage, the carrier issued a dock receipt and a bill of lading that had been prepared by plaintiff's agent, a freight forwarder, but had not been signed or issued. *Id.* However, the parties stipulated that the bill of lading was to have been submitted to the carrier by the plaintiff or its agent "for signing and issuance at or about the time the cases[, including the case at issue,] were to be loaded on board the designated vessel." *Id.* Plaintiff argued in part that the dock receipt was ambiguous and could not be understood to incorporate the limiting terms of the bill of lading. *Id.* at 847-48. The court

disagreed, explaining that the dock receipt clearly incorporated the terms of the bill of lading. *Id.* at 847. The court continued, "[t]he form of bill of lading was concededly known, and as a matter of common business experience in transactions of this nature both parties must be deemed bound by the terms it contained." *Id.* In the alternative, *Berkshire* noted that, even if there had been no dock receipt, it was the clear intention of the parties to be bound by the bill of lading. *Id.* For this proposition, *Berkshire* relied on *Luckenbach S.S. Co. v. American Mills Co.*, where the former Fifth Circuit held the parties in that case were bound by the terms of a bill of lading in customary form despite the absence of a dock receipt. *Luckenbach S.S. Co. v. Am. Mills Co.*, 24 F.2d 704, 705 (5th Cir. 1928). *Luckenbach* explained that the appellant in that case was required by law to issue a bill of lading, and that appellee was presumed to know the law, so held that "an implied understanding arose from common business experience that the carrier would issue [a] bill of lading as it was its custom to issue to shippers in the usual course of its business." *Id.* Accordingly, *Luckenbach* held that "a shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business." *Id.*

The courts in *Berkshire* and *Luckenbach* rendered their decisions at later stages of litigation and based on factual determinations. *Berkshire* describes "common business experience" in the shipping industry, and both *Berkshire* and *Luckenbach* advert to the existence of a bill of lading and of customs regarding a carrier operating in the ordinary course of business.

Here, it would be improper for the Court to conclude that industry standards dictate that Plaintiff is bound by the Terms and Conditions. Before the Court is the Complaint and Defendant's submissions, but no Bill of Lading. Nor is evidence of industry custom or of Defendant's billing practices in the ordinary course of its business before it. *See, e.g.*, *MBH Mar. Int. LLC v. Manteiga*,

No. 17-61909-CIV, 2018 WL 1363844, at *2 (S.D. Fla. Mar. 15, 2018) (reiterating previous ruling that "[i]ndustry custom and practice may be a central issue in th[e] case, but that is a question of fact to be resolved at summary judgment or trial."). Moreover, *Berkshire* is further distinguished by the fact that a bill of lading's terms and conditions were incorporated by reference into the dock receipt, and the parties there stipulated—unlike here—that the plaintiff was to have received and signed the bill of lading. As such, there was no question that the parties there were bound by terms and conditions.

To the extent that *Luckenbach* supports that the terms and conditions of a carrier's standard bill of lading, issued after the receipt of a booking confirmation, binds a shipper, that would still leave the factual question of whether a Bill of Lading was standard and issued in the ordinary course of Defendant's business. Thus, the Court is not persuaded at this juncture that *Berkshire* or *Luckenbach* require the Court to find that the parties are in contractual privity.

Finding that Defendant has not shown the parties are in contractual privity, the Court declines to reach whether the allegedly negligent conduct is within the scope of the Terms and Conditions. The Court also declines to reach Plaintiff's argument that Defendant failed to give reasonable notice of the Terms and Conditions. The Motion must therefore be denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [6]**, is **DENIED**. Defendant shall file its Answer to the Complaint **by August 14, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 4, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Case No. 23-cv-21788-BLOOM/Otazo-Reyes

Counsel of Record